UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
PATRICK BRAGA,

        Plaintiff,

    - against -

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-1345 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Patrick Braga brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") to deny his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 10, 13.) For the following reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

**I. Procedural History**

On August 7, 2014, Plaintiff filed applications with the SSA for DIB and SSI, in which he alleged he had been disabled as of April 28, 2014. (Administrative Transcript ("Tr."), Dkt. 7, at ECF[1] 239–40, 243–46.) His applications were denied. (*Id.* at ECF 111–25.) After requesting a hearing (*id.* at ECF 127–28), Plaintiff appeared before Administrative Law Judge Hilton R. Miller (the "ALJ") on April 12, 2017 (*id.* at ECF 59–82). In a decision dated May 2, 2017, the ALJ

---

[1] "ECF" refers to the "Page ID" number generated by the Court's CM/ECF docketing system and not the document's internal pagination.

determined that Plaintiff was not disabled and was therefore not entitled to DIB or SSI. (*Id.* at ECF 40–50.) Specifically, the ALJ found that Plaintiff was capable of "light exertional work, with a sit/stand option and further postural limitations as defined to accommodate his degenerative disc disease and obesity." (*Id.* at ECF 47.) On December 27, 2017, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the ALJ's decision. (*Id.* at ECF 26–28.) Thereafter, Plaintiff timely[2] commenced this action.

## II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the

---

[2] According to congressional statute,

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on January 1, 2018 and notes that Plaintiff filed the instant action on March 2, 2018—exactly 60 days later. (*See generally* Complaint, Dkt. 1.)

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 28, 2014 and that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine, carpal tunnel syndrome, and obesity. (Tr., at ECF 42–43.)

Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 CFR § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. In this case, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr., at ECF 43–44.) Moving on to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform "light work" as defined in 20 C.F.R. § 404.1567(b).[4] (*Id.* at ECF 44–48.) Qualifying his RFC determination, the ALJ noted that Plaintiff

> can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday;

---

[3] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1).

[4] According to the applicable regulations,

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

3

> sit with normal breaks for a total of about 6 hours in an 8-hour workday; can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; can occasionally balance, kneel, crouch, and squat, but never crawl; cannot perform manipulation using the bilateral lower extremities, such as foot controls or foot pedals; and cannot perform work involving hazards such as machinery, motor vehicles, unprotected heights, or vibrations; the claimant can occasionally reach overhead and frequently reach in all other directions; can frequently perform fine and gross manipulation; and he requires a sit/stand option every 30 minutes.

(*Id.* at ECF 44.)

Relying on his RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as a maintenance mechanic or a building maintenance representative. (*Id.* at ECF 48–49.) The ALJ then proceeded to step five. At step five, the ALJ must determine whether the claimant—given his RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, namely: (1) cashier, which has an availability of 500,000 jobs; (2) ticket seller, which has an availability of 12,000 jobs; and (3) price marker, which has an availability of 58,000 jobs. (Tr., at ECF 49–50.)

**STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quotations and brackets omitted). In determining whether the

4

Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff argues that the ALJ erred by 1) improperly discounting treating physician evidence, and 2) improperly elevating the opinions of various consultative examiners. (Plaintiff's Brief, Dkt. 11, at ECF 611–15.) The Court addresses each argument in turn.

**I.      Treating Physician Rule**

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[5] of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quotations, brackets, and citations omitted). As the Second Circuit has explained:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives [the] claimant's treating source's opinion.

---

[5] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, which was initially filed on August 7, 2014, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520(c).

5

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citations, quotations, and brackets omitted).

The information in the record with respect to Plaintiff's treating physicians during the relevant time period consists of the following. Starting in November of 2009, Plaintiff saw a physician named Dr. Alan Perel for treatment related to Plaintiff's headaches, neck pain, and paresthesia[6] in his arms. (Tr., at ECF 352–58.) Dr. Perel noted muscle spasms in Plaintiff's lumbar region as well as significant issues relating to Plaintiff's wrist movements. (*Id.* at ECF 357.) Dr. Perel ordered an MRI, which revealed degenerative changes and spinal stenosis.[7] (*Id.* at ECF 354.) In May 2014, a psychiatric counselor named Ileanna Acosta examined Plaintiff after a relapse of substance abuse related to the drug PCP. (*Id.* at ECF 362–68.) In June 2014, Dr. Alexsandr Zverinskiy—a physician at the Richmond University Medical Center—diagnosed Plaintiff with PCP dependence, depression, and anxiety. (*Id.* at ECF 384–86.) Around this time, Plaintiff was treated by various other physicians at the Richmond University Medical Center for complaints of back pain, headaches, and numbness in the left arm. (*Id.* at ECF 387–91.) In October 2014, Dr. Jung Hahn treated Plaintiff and diagnosed him with lumbago,[8] brachial neuritis,[9] and brachial

---

[6] "Paresthesia is defined as a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet." *Agostini v. Comm'r of Soc. Sec.*, No. 13-CV-2175 (KAM), 2016 WL 8711392, at *4 n.8 (E.D.N.Y. Feb. 19, 2016) (quotation omitted).

[7] "Spinal stenosis is the narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by an encroachment of bone upon the space." *Guadalupe v. Barnhart*, No. 04-CV-7644 (HB), 2005 WL 2033380, at *2 n.2 (S.D.N.Y. Aug. 24, 2005) (quotation omitted).

[8] "Lumbago is defined as pain in the mid and lower back; a descriptive term not specifying cause." *Gutierrez v. Comm'r of Soc. Sec.*, No. 16-CV-6673 (SDA), 2018 WL 333866, at *1 n.4 (S.D.N.Y. Jan. 9, 2018) (quotation and brackets omitted).

[9] "Brachial neuritis is a term used to describe an inflammation of the brachial plexus that causes sudden-onset shoulder and arm pain, followed by weakness and/or numbness." *Conant v.*

6

radiculitis.[10] (*Id.* at ECF 535–36.) From February through May 2016, Plaintiff repeatedly saw Dr. Lauren Grossman, who performed carpal tunnel release surgery on both of Plaintiff's hands. (*Id.* at ECF 538–42.) In July 2016, Plaintiff saw a physician named Dr. Simone Betchen, who performed a foraminotomy[11] on Plaintiff's spine. (*Id.* at ECF 488–93.)

In October 2016, Dr. Grossman referred Plaintiff to Dr. Florence Shum, a neurologist, who diagnosed Plaintiff with focal dystonia,[12] muscle spasm, post-laminectomy syndrome, and radiculopathy.[13] (*Id.* at ECF 46, 568–69.) Plaintiff continued to see Dr. Shum, on a regular basis, through April 2017, when Dr. Shum completed a medical source statement in which she reported that Plaintiff could not lift more than 10 pounds occasionally, could not stand and/or walk for more than two hours at a time, and could only sit for fewer than six hours in an eight-hour workday. (*Id.* at ECF 504.) Dr. Shum additionally advised that Plaintiff was limited in his ability to use his hands due to spasms when using any tools and that he could not sit or stand for more than 15 to 20 minutes at a time. (*Id.*)

---

*Comm'r of Soc. Sec.*, No. 15-CV-500 (GLS), 2016 WL 6072386, at *2 n.3 (N.D.N.Y. Oct. 17, 2016) (quotation omitted

[10] "Brachial radiculitis is a type of peripheral neuropathy related to brachial plexus that severely affects the chest, shoulder, arm and hand." *Diberardino v. Comm'r of Soc. Sec.*, No. 17-CV-2868 (PKC), 2018 WL 3404141, at *2 n.5 (E.D.N.Y. July 12, 2018) (quotation omitted).

[11] "A foraminotomy is the operation of removing the roof of the intervertebral foramina, done for the relief of nerve root compression." *Jefferson v. Astrue*, No. 06-CV-1729 (MRK) (WIG), 2008 WL 918473, at *4 n.11 (D. Conn. Mar. 11, 2008) (quotation omitted).

[12] Focal dystonia is "a hand condition that ma[kes] repetitive, precision work extremely painful." *DaPaoli v. Abbot Labs.*, 140 F.3d 668, 673 (7th Cir. 1998).

[13] Radiculopathy, "a disease of the nerve roots," is "not a specific condition, but rather a description of a problem in which one or more nerves are affected and do not work properly (a neuropathy)." *Jefferson*, 2008 WL 918473, at *2 n.7 (quotations omitted).

### A. The ALJ Should Have Solicited the Medical Opinion of Dr. Grossman

In his decision, the ALJ referenced the treatment provided by Drs. Hahn, Betchen, and Shum (*id.* at ECF 45–48), but made no reference to the treatment provided by Drs. Perel and Zverinskiy, or the psychiatric evaluation performed by Ileanna Acosta. Most significantly, however, the ALJ did not mention the treatment provided by Dr. Grossman.

The Court holds that remand is required to allow the ALJ to solicit Dr. Grossman's medical opinion. *See Jackson v. Colvin*, No. 13-CV-5655 (AJN) (SN), 2014 WL 4695080, at *19 (S.D.N.Y. Sept. 3, 2014) (remanding where the ALJ failed to discharge his "affirmative duty to develop the record fully by obtaining an opinion from [the plaintiff's] . . . treating physician"). Dr. Grossman performed carpal tunnel release surgery on both of Plaintiff's hands in May 2016. (Tr., at ECF 538–42). The ALJ identified carpal tunnel syndrome as one of the severe impairments from which Plaintiff suffers. (*Id.* at ECF 42–43.) Additionally, the ALJ determined that Plaintiff was capable of performing the work-related duties of a cashier, ticket seller, and price marker (*id.* at ECF 49–50)—all jobs that implicate Plaintiff's manual dexterity.

Dr. Grossman's medical opinion as to Plaintiff's manual dexterity was therefore directly relevant to the ALJ's ultimate determination regarding disability, and should be solicited on remand. At the very least, the ALJ should have requested and considered Dr. Grossman's opinion, and explained, on the record, what weight or deference, if any, the ALJ found it deserved and why. *See Rocchio v. Comm'r of Soc. Sec.*, No. 08-CV-3796 (JPO), 2012 WL 3205056, at *2 (S.D.N.Y. Aug. 7, 2012) (holding that Commissioner's denial of benefits was not substantially justified where "the ALJ [] did not seek to solicit an opinion from [the plaintiff's] treating physician prior to relying on the opinion of a consultative physician and denying [the plaintiff's] claim"); *Tirado v. Astrue*, No. 10-CV-2482 (ARR), 2012 WL 259914, at *5 (E.D.N.Y. Jan. 25, 2012) (holding that

8

the ALJ "erred in neglecting to solicit an opinion" from the plaintiff's "treating physician specialist[] as to [the] plaintiff's residual functional capacity").

Accordingly, on remand, the ALJ should solicit the medical opinion of Dr. Grossman, as one of Plaintiff's treating physicians, and make an explicit determination of the weight it is being accorded and the reasons underlying that determination.

**B.     The ALJ Should Have Sought Clarification from Dr. Shum**

Acknowledging Dr. Shum's status as Plaintiff's treating physician, the ALJ assessed Dr. Shum's medical opinion as follows:

> In November 2016, [Plaintiff] began seeing Dr. Shum, a neurologist, reporting continued locking and cramping in his hands, particularly when holding hand tools such as a hand drill or wrench, though he reported that his numbness and paresthesia had improved significantly following his carpal tunnel release surgeries. [Plaintiff] denied significant neck pain but reported chronic lower back pain. Dr. Shum found that [Plaintiff] had a good range of motion in the neck, intact sensation and reflexes, normal muscle tone in the extremities, but slightly weaker right[-]hand grip, slightly weakened motor strength in the left lower extremity, and a mildly antalgic[14] gait. [Plaintiff] was given botox injections in the upper extremities. In a follow-up visit in December 2016, [Plaintiff] reported some improvement and no locking episodes. [Plaintiff] continued to report lower back pain, particularly with prolonged standing, walking, or sitting. . . .
>
> In a follow-up visit with Dr. Shum, [Plaintiff] reported some improvement with his back pain, but he was still regularly experiencing pain at 4–5 out of 10. Dr. Shum again noted a mildly antalgic gait, and a slight weakness in the right[-]hand grip and left lower extremity. A January 2017 MRI of the lumbar spine showed multilevel degenerative disc disease with annular bulge at L2-3 mildly compressing the ventral aspect of the thecal sac. A[n] EMG/NCV study revealed chronic bilateral L4-5 radiculopathy with an acute component on the left side. Dr. Shum found in February 2017 that [Plaintiff's] neurological exam was stable and he was referred for epidural injections and continued pain medication. [Plaintiff] underwent additional botox injections in March 2017. . . .

---

[14] "An a[n]talgic gait is defined as a limp in which a phase of the gait is shortened on the injured side to alleviate the pain experienced when bearing weight on that side." *Wright v. Astrue*, No. 07-CV-4102 (NLH), 2008 WL 5070760, at *5 n.5 (D.N.J. Nov. 24, 2008) (quotation omitted).

> Dr. Shu[m], [Plaintiff's] neurologist, opined that [Plaintiff] could only occasionally lift ten pounds, and could stand and/or walk less than two hours and sit less than six hours in a workday, however she found no postural or manipulative limitations. *This opinion is given limited weight. While Dr. Shu[m] is a treating specialist, she only treated [Plaintiff] beginning in December 2016,* [15] *and her opinion is unsupported and inconsistent with her physical exam findings that [Plaintiff] had a good range of motion in the neck, intact sensation and reflexes, normal muscle tone in the extremities, but slightly weaker right[-]hand grip, slightly weakened motor strength in the left lower extremity, and a mildly antalgic gait.*

(Tr., at ECF 46–47 (citations omitted) (emphasis added).)

The Court concludes that remand is also required to enable the ALJ to solicit the necessary information from Dr. Shum to address the perceived deficiencies in her medical reports. As courts in this Circuit have held, "the ALJ must make every reasonable effort to help an applicant get medical reports from his medical sources" and "must seek additional evidence or clarification when the report from the claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quotations and brackets omitted); *see also Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) ("Legal errors regarding the duty to develop the record warrant remand." (collecting cases)).

Once the ALJ concluded that Dr. Shum's medical reports contained deficiencies, *e.g.*, that her conclusions about Plaintiff's physical limitations were "unsupported and inconsistent with her

---

[15] The Court notes that the ALJ's assessment of Dr. Shum's treatment of Plaintiff contained inconsistent dates. On one page of the ALJ's decision, he states that Plaintiff began seeing Dr. Shum in November 2016 (Tr., at ECF 46), but on another page, he states that Plaintiff did not begin seeing Dr. Shum until December 2016 (*id.* at ECF 48). Such an inconsistency suggests that remand is appropriate. *See Rodriguez v. Astrue*, No. 07-CV-534 (WHP) (MDH), 2009 WL 637154, at *22 (S.D.N.Y. Mar. 9, 2009) ("If the ALJ rejects the findings of a treating physician because, in part, he underestimates the duration of treatment, he commits an error of law because he improperly weighed the findings of the treating physician when making his decision.").

physical exam findings" (Tr., at ECF 48), the ALJ incurred an affirmative obligation to "seek clarification and additional information from [Dr. Shum] to fill any clear gaps before dismissing the doctor's opinion." *Calzada*, 753 F. Supp. 2d at 269. In other words, if the ALJ wanted to disregard Dr. Shum's medical opinion, the ALJ needed to first ask Dr. Shum to clarify the deficiencies he perceived in that opinion. While an ALJ is entitled to disregard the opinion of a claimant's treating physician after giving the physician the opportunity to correct the deficiencies in his or her medical reports, the ALJ must make clear that this decision is based on conclusions made by a medical professional. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."); *Hillsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

## II.     Consultative Examiner Opinions

Here, the ALJ elevated the opinions of various consultative physicians over that of Dr. Shum (*see* Tr., at ECF 43–48) without explaining how those consultative opinions were "more consistent with the underlying medical evidence" than Dr. Shum's opinion. *Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015). Specifically, in his assessment of consultative examiner opinions, the ALJ both (1) failed to account for the fact that several of the consultative examiner opinions to which he accorded considerable weight were consistent with Dr. Shum's opinion and appeared to support a finding that Plaintiff was disabled, and (2) failed to explain why the consultative examiner opinions that undermined Dr. Shum's opinion were more credible.

First, in determining that Plaintiff could engage in "light work," the ALJ gave "significant weight" to the opinions of Drs. Lamberto Flores and Mahendra Misra (Tr., at ECF 48)—but these doctors' opinions appear *consistent* with Dr. Shum's and tend to *support* a finding that Plaintiff is disabled. Dr. Flores, an internal medicine consultative examiner, "opined in October 2014 that [Plaintiff] was limited in fully squatting, bending, heel walking, neck rotation, prolonged walking, sitting, standing, climbing stairs, and heavy lifting." (*Id.* at ECF 48; *see also id.* at ECF 418–21.) Dr. Misra, an orthopedic consultative examiner, assessed Plaintiff in February 2015 and subsequently opined that Plaintiff "might have difficulty doing jobs which require prolonged sitting, standing, walking, crouching, crawling, climbing, bending, lifting, pushing, or pulling." (*Id.* at ECF 48; *see also id.* at ECF 430–32.) On remand, the ALJ should clarify precisely if and how these doctors' opinions undermine or, alternatively, bolster Dr. Shum's opinion. *See Grosso v. Colvin*, No. 15-CV-8709 (AT) (GWG), 2016 WL 4916968, at *9 (S.D.N.Y. Sept. 14, 2016) (holding that, even where "the ALJ made extensive efforts to evaluate the conflicts between [the opinion of the claimant's] treating physician . . . and the opinions of consultative examiners," remand was nevertheless appropriate "because of certain errors reflected in the ALJ's decision regarding the weight to be accorded to the consultative examiners").

Second, the ALJ gave greater weight to the opinion of Dr. Chitoor Govindaraj—a consultative examiner—than the opinion provided by Dr. Shum without sufficiently explaining why Dr. Govindaraj's opinion was more consistent with the medical evidence. While the ALJ decided give Dr. Shum's opinion "limited weight" (Tr., at ECF 48), he chose to give "partial weight" to the opinion of Dr. Govindaraj, who "opined in his February 2016 narrative report that [Plaintiff] had no restrictions in sitting, standing, walking, or weight bearing" (*id.*; *see also id.* at ECF 460). The ALJ noted that "in a medical source statement form," Dr. Govindraj "checked off

that [Plaintiff] could lift and carry at the medium exertional level, but sit for [only] four to five hours, stand for three to five hours, and walk for two to four hours in an eight[-]hour workday, with postural limitations"—an assessment that the ALJ determined was "generally consistent with the above residual functional capacity." (*Id.* at ECF 48; *see also id.* at ECF 461–66.) The ALJ decided to give partial weight to Dr. Govindaraj's opinion because "the medical source statement form is specific and mostly consistent with the record, though [the undersigned ALJ found] that the limitations in total sitting, standing, and walking were unsupported given the sit/stand option" with which the ALJ qualified her RFC determination. (*Id.* at ECF 48.) Without more elaboration as to why this opinion was more credible than Dr. Shum's, this analysis was insufficient. *See Lugo Rodriguez v. Berryhill*, No. 17-CV-93 (VLB), 2018 WL 1135330, at *7 (D. Conn. Mar. 2, 2018) ("An ALJ may not make an arbitrary decision to credit a consultative examiner's opinion over that of a treating physician. If [the treating physician's] medical opinion should not be given 'controlling weight,' [the ALJ] must then consider the requisite factors under 20 C.F.R. § 404.1527(c)(1)–(6)."); *Wilson v. Colvin*, No. 15-CV-6316 (JWF), 2016 WL 5462838, at *12 (W.D.N.Y. Sept. 28, 2016) (remanding where "the ALJ's decision to credit the opinion of the consultative examiner over plaintiff's treating physicians [was], as best the Court can tell from the record, an arbitrary one.").

Finally, the ALJ appeared to give more weight to the opinions of consulting mental health professionals than that of Dr. Shum with respect to Plaintiff's ability to work. This was error. For example, the ALJ noted that a *psychiatrist* named Dr. Elsayed Hassan, who examined Plaintiff in October 2014, found that Plaintiff "was in no apparent distress, and he ambulated independently with a normal gait and had full motor strength and no neurologic deficits, but he had a limited range of motion, muscle spasm, and tenderness in the cervical and lumbar spine." (Tr., at ECF 45;

*see also id.* at ECF 392–94.) The ALJ also gave "significant weight" to the opinion of Dr. Quarles Brickell, a *psychological* consultative examiner, who assessed Plaintiff in November 2014 and January 2016 and determined that Plaintiff "had no limitations in his ability to interact appropriately with supervision, co-workers and the public or respond to changes in the routine work setting." (*Id.* at ECF 43; *see also id.* at ECF 451–53.) On remand, the ALJ should specifically elaborate on why—notwithstanding these physicians' areas of expertise—their opinions regarding Plaintiff's physical impairments were entitled to relatively greater weight. *Cf. Wright v. Astrue*, No. 07-CV-2464 (JFB), 2009 WL 4547065, at *14 (E.D.N.Y. Dec. 1, 2009) (affirming ALJ decision where the ALJ "afforded little probative weight to the opinion of [a physician] that [the claimant] could return to full-duty work as a police officer, because said opinion concerns vocational issues outside of the physician's area of expertise." (quotation omitted)).

Thus, the ALJ credited the opinions of this hodgepodge of consultative medical sources over that of Plaintiff's treating neurologist, Dr. Shum, without explaining precisely how these opinions undermined Dr. Shum's analysis or why the ALJ's decision to afford greater weight to these consultative examiner opinions was justified on the record before him. This approach was contrary to the treating physician rule and is not supported by substantial evidence in the record before this Court.

\* \* \*

In sum, the Court finds that remand is necessary to enable the ALJ to obtain enough information to determine whether the opinions of Drs. Grossman and Shum—Plaintiff's treating physicians—are entitled to controlling weight. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("[W]here we are unable to fathom the ALJ's rationale in relation to evidence in the record,

especially where credibility determinations and inference drawing is required of the ALJ, we will not hesitate to remand for further findings or a clearer explanation for the decision." (quotations omitted)).  Although Dr. Grossman's and Dr. Shum's medical opinions were not "[themselves] determinative," their opinions were entitled to "controlling weight" so long as the ALJ had enough information to determine that they were "well supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike the judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." (quotation and ellipsis omitted)).

If, after soliciting the necessary information from Drs. Grossman and Shum on remand, the ALJ determines that these doctors' opinions are still entitled to little weight, he must adduce evidence from a medical professional to support that conclusion.  *See Greek*, 802 F.3d at 375.  In doing so, the ALJ should keep in mind that he "may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence."  *Mayor v. Colvin*, No. 15-CV-344 (AJP), 2015 WL 9166119, at *18 (S.D.N.Y. Dec. 17, 2015); *see also Suarez*, 102 F. Supp. 3d at 577 (noting that the ALJ is free to give greater weight to consultative medical examiners' opinions so long as he documents his rationale for finding the relevant standards met).

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.  The Commissioner's decision is

15

remanded for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

    SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: August 29, 2019
      Brooklyn, New York